# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| THE BEACH HOUSE CLUB, dba THE CABANA CLUB<br><br>     **Plaintiff,**<br><br>vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>     **Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:08CV287DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff The Beach House Club dba The Cabana Club's ("the Club") Motion for Summary Judgment, Defendant Travelers Property Casualty Company of America's ("Travelers") Cross Motion for Summary Judgment, and Plaintiff's Motion to Strike Portions of Affidavit of Wanda Braddy. The court held a hearing on the motions on July 15, 2009. At the hearing, Plaintiff was represented by J. Angus Edwards, Jeffery W. Shields, and J. Colby Clark, and Defendant was represented by Andrew D. Wright. The court heard oral argument and took the motions under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the parties' motions. Now being fully advised, the court enters the following Memorandum Decision and Order.

1

**BACKGROUND**

The parties submitted a Joint Stipulation of Material Facts.  A majority of the following facts come from that statement of stipulated facts.  The parties, however, also submitted additional material facts.  Many of those additional facts were ultimately agreed to as well.  The court finds no disputes as to the material facts at issue in this case.

The Cabana Club formerly did business in Salt Lake City, Utah.  On February 19, 2007, Travelers issued a Commercial Package Policy to the Club, effective February 15, 2007 to February 15, 2008 ("the Policy").  The Club's agent or broker for the Policy was Poulton Associates, Inc.  Poulton Associates was not an agent of Travelers.

The terms of the Policy indicated that Travelers could cancel the Policy for the Club's "non-payment of premium."  On October 1, 2007, Travelers mailed the Club a Notice of Cancellation for Non-Payment for the Policy.  The Cancellation Notice stated that Travelers had not received the premium payment due on the policy and the policy would be cancelled on October 21, 2007.  The Notice further stated that Travelers would be pleased to reinstate this coverage if it received the payment on or before the effective date of cancellation.  In that event, the Notice stated that Travelers would send the Club a Notice of Reinstatement continuing its coverage.

On October 16, 2007, by telephone, the Club authorized Travelers to deduct the minimum amount due from the Club's bank account.  Travelers mailed the Club a Notice of Reinstatement, dated October 16, 2007.  The Reinstatement Notice stated that "[r]eceipt of funds dishonored upon presentment is not a valid means of reinstatement.  Reinstatement will only occur when all conditions have been met.  If these conditions have not been met, the reinstatement will be null

2

and void."  Furthermore, the Reinstatement Notice stated that "circumstances will occasionally cause a payment to arrive late, but please be aware that if future payments don't reach us on time, WE MAY REQUIRE FULL PAYMENT OF THE OUTSTANDING BALANCE ON YOUR POLICY.  Please contact your Travelers representative if you have any questions concerning this notice."

On October 21, 2007, a fire at the Club destroyed personal property and significant portions of the building.  On October 22, 2007, the Reinstatement Notice was received by Poulton Associates, the Club's agent. On October 23, 2007, the Club's bank reported to Travelers that there were insufficient funds in the Club's account to fulfill the Club's October 16, 2007 authorization.  On October 24, 2007, the Club filed a claim on the Policy based on the October 21, 2007 fire.

On October 30, 2007, Travelers sent a letter to the Club stating:  "Your payment by phone as an ASH transaction for $475.27 was returned to Travelers not honored by your bank."  The letter further stated: "If your payment was in payment of legal notice[s] of cancellation, the reinstatement notice[s], if issued is null and void.  The above coverage[s] will be cancelled on the effective date of the legal notice of cancellation."  The letter also provided that Travelers would guarantee continued coverage if it received the minimum amount due, $475.27, within fifteen days from the date of the letter.  The Club did not tender payment during those fifteen days.

On November 5, 2007, Travelers sent a Reservation of Rights letter to the Club. The letter stated, "At this time we do not have sufficient information to make a determination as to whether all or any part of the damages you are claiming in this matter would fall within the

3

protection of your insurance policy."  Travelers reserved its rights to disclaim coverage because it did not have adequate information to make a determination as to the application of coverage under the Policy.

Travelers also sent a letter to the Club, dated January 8, 2008, stating that the Policy was cancelled for non-payment starting at 12:01 a.m. on October 21, 2007.  The letter further stated that because there were insufficient funds in the Club's account to make payment, the cancellation occurred at 12:01 a.m. on October 21, 2007.

The Common Policy Conditions of the Policy provided that Travelers "may cancel this Policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation: [a] 10 days before the effective date of cancellation if we cancel for non-payment of premium."  In addition, the Common Policy Conditions in the Policy require that any notice of cancellation "state the effective date of cancellation."  The parties agree that under Utah Code Annotated Section 31A-21-303(2)[c](ii), an insurance policy cannot be cancelled without at least ten-day notification.

## DISCUSSION

### Cross Motions for Summary Judgment

The issue presented by both motions for summary judgment is whether the Policy was in effect at the time of the fire on October 21, 2007.  Travelers argues that the Policy was not in effect at the time of the fire because it was canceled at 12:01 a.m. on that date.  In contrast, the Club argues that the earliest date on which the Policy could have been canceled was the date on which its payment was dishonored by the bank, October 23, 2007.

Under Utah law, "[i]nsurance policies are contracts and are interpreted under the same

4

general rules applicable to other contracts." *Phoenix Indemnity Ins. Co. v. Bell*, 896 P.2d 32, 35 (Utah Ct. App. 1995).  In an insurance contract, however, ""'[a]ll ambiguities are construed against the insurer and are resolved in favor of coverage.'"" *Id.* (citations omitted).  Accordingly, policies are strictly construed in favor of the insured.  *Id.*

Moreover, an insurer must comply with the Utah Legislature's requirements contained in the Utah Insurance Code.  *See* Utah Code Ann. §§ 31A-1-101 to -31-110 (2005 & Supp. 2008). Recognizing that "a policy may provide terms more favorable to insureds than this section requires," the Utah Insurance Code states that "[c]ancellation for nonpayment of premium is effective no sooner than ten days after delivery or first class mailing of a written notice to the policyholder." *Id.* §§ 31A-21-303(1)(b), (2)(c)(ii).  The Policy at issue in this case provides that Travelers "may cancel this Policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation: [a] 10 days before the effective date of cancellation if we cancel for non-payment of premium."

In *Phoenix Indemnity*, the Utah Court of Appeals explained that "[s]uch advance notice gives an insured time to make other arrangements so that he or she will not be left without coverage."  896 P.2d at 35; *see also Green v. J.C. Penney Auto Ins. Co.*, 722 F.2d 330, 332-33 (7th Cir. 1983) (purpose of the ten-day statutory notice for cancellation is to make the insured aware that the policy is being terminated in time to obtain other insurance and forestall a retroactive notice). .

It is undisputed in this case that, on October 1, 2007, Travelers sent a Notice of Cancellation to the Club stating  that the Policy would cancel on October 21, 2007, if payment was not received.  It is also undisputed that the Club gave authorization to Travelers on October

16, 2007, to deduct the minimum payment due from the Club's bank account. Based on that payment, Travelers issued a Reinstatement Notice on that same day.

The Reinstatement Notice provides that if payment is dishonored, the reinstatement is null and void. Travelers contends that the language of the Reinstatement Notice makes the reinstatement conditional until payment is honored. Its position, therefore, is that the conditions for reinstatement were not satisfied and cancellation as of the effective date of the Notice of Cancellation was proper.

The Policy in this case, however, does not address the reinstatement issue and whether payment was conditional until it was honored. The Reinstatement Notice is the only document in which Travelers states that dishonored funds would not validly reinstate coverage and that reinstatement would be considered null and void. The only notice to the Club, therefore, that Travelers considered its October 16 payment conditional was the language contained in the Reinstatement Notice.

This fact is critical because there is a dispute as to whether the Club received the Reinstatement Notice prior to the fire. The Club contends that it did not receive the Reinstatement Notice until after the October 21, 2007 fire, and it, therefore, had no notice that its payment was considered only conditional. While the parties do not agree as to the date on which the Club received the Reinstatement Notice, it is undisputed that the Club's agent, Poulson Associates, which is also located in Salt Lake City, Utah, did not receive the Reinstatement Notice until October 22, 2007.

Travelers argues that the mailbox rule should be applied with respect to the Reinstatement Notice because it contends that the Club's assertion that it did not receive the

Notice until after October 21, 2007 is unreasonable.  The mailbox rule provides that "the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time."  *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001).

Travelers claims that there is no evidence that rebuts the mailbox rule's applicability to the Club, and that the court should presume that the Club received the notice in due time prior to the fire.  Even if the mailbox rule applied in the insurance context, however, it is only a rebuttable presumption.  Therefore, even if this court applied the mailbox rule, the court finds that the presumption is rebutted by the undisputed fact that the Club's agent did not receive the notice until October 22, 2007.  Travelers has presented no evidence that the Club received the notice before its agent.  And the court finds that there is no basis for assuming that the Club would have received the notice prior to another entity located in the same city.

Moreover, it is doubtful that a Utah court would allow the mailbox rule to apply in this context.  In *Diamond T Utah, Inc. v. Canal Ins. Co.*, 361 P.2d 665, 667 (Utah 1961), the court stated that the 10-day notice period for cancellation "would commence running from the date of service, which must be ascertained, and proof of mailing would not establish that date."  The court further stated that the "burden was upon [the insured] to prove if and when service of the notice was made on the insured."  *Id.*  If it is Travelers burden to demonstrate when the Club was served, it has failed to meet such burden through use of the mailbox rule or otherwise.  Therefore, the court concludes that the Club did not receive the Reinstatement Notice prior to the fire.

In *McCoy v. Blue Cross and Blue Shield of Utah*, 980 P.2d 694 (Utah Ct. App. 1999), the

court stated that under the principle of construing insurance policies strictly against the insurer

and in favor of coverage, "an insurer is required to strictly comply with all provisions that give an

insured notice of the terms, conditions, limitations or changes to an insurance policy." *Id*. at 697.

In this case, the Travelers did not provide the Club with notice regarding the limitations on its

reinstatement of coverage in either the terms of the Policy.  There is also no evidence that the

Club received the limitations provided for in the Reinstatement Notice prior to the date of the

fire.

On the date of the fire, therefore, the Club believed that it had made its premium payment

and that the policy had been reinstated.  The Club did not have notice that the reinstatement was

conditional.  Most significantly, the Club was not on notice that it needed to make other

arrangements so that it would not be left without coverage.  The court finds troubling the fact that

Travelers did not present payment to the Club's bank until October 23, 2007, when the Club

authorized payment to be taken on October 16, 2007.  Travelers' delay in presenting the payment

authorization to the Club's bank was highly prejudicial in this case.  Not only did Travelers seek

payment two days after the cancellation date, it sought payment two days after a fire when the

Club had not had two days of receipts to deposit.

Travelers does not attempt to explain the reason for presenting the payment authorization

to the Club's bank on October 23, two days after the effective date of cancellation.  By

attempting to make the Club's payment authorization conditional upon the payment being

honored and not presenting the payment authorization prior to the cancellation date, Travelers

has created a situation providing for a retroactive cancellation that provides the insured with no

notice that obtaining alternative coverage may be necessary.  Such a result is directly contrary to

the stated policies of Utah insurance law.  The policies and related requirements of Utah's insurance law are necessary to protect insured from this kind of conduct.

In *Phoenix Indemnity*, the court noted that payment by check is generally conditional, but under certain circumstances the express or implied intentions of the parties could change the general rule and "a check may be considered proper consideration for an insurance contract even though subsequently dishonored by the payee bank."  896 P.2d at 36.  In *Phoenix Indemnity*, the court found that the insurer's issuance and countersignature of the policy after the check was dishonored indicated that the insurer accepted the check as consideration and regarded the insurance contract as complete.  *Id.* at 37.  The court also discussed that the policy lacked specific language that made actual payment a condition precedent to insurance coverage since the policy provided coverage in "return for payment."  *Id.* at 37.  This phrase, when construed against the insurer, failed to impose an express condition precedent requiring receipt of cash funds prior to receiving coverage.  *Id.*

Travelers contends that, unlike the insurer in *Phoenix Indemnity*, it took no action consistent with coverage after it learned that the premium payment was dishonored.  But its actions relating to the cancellation date is telling.  Travelers issued a Reinstatement Notice the same date that the Club authorized payment and then waited until after the cancellation date had passed to present the payment authorization to the bank.  By not presenting the payment to the bank prior to the date of cancellation, Travelers acted consistent with the fact that the Policy had been reinstated.  In addition, there is no language in the Policy stating that reinstatement was conditional on the payment being honored.  That condition was contained only in the Reinstatement Notice, which the court has already found was not provided to the Club prior to

the date of cancellation.  The court, therefore, concludes that, as in *Phoenix Indemnity*, Travelers acted consistent with the fact that the Policy had been reinstated and that when the Policy is construed against Travelers, it fails to expressly impose a condition precedent requiring receipt of cash funds prior to the due date.

Travelers relies on *USAA Casualty Ins. Co. v. Striplin*, 82 F.3d 421 (8th Cir. 1996) (per curiam) (unpublished), in which the insured received a notice of cancellation on April 12, stating that cancellation would be effective April 27 for nonpayment of premium.  *Id.* at 421.  The insurer received timely payment and responded with a letter, dated May 5, which reinstated the policy but stated that if the check was not honored, the cancellation remained in effect.  *Id.*  The insured's check was twice returned for insufficient funds.  *Id.*  In a letter dated May 27, but postmarked June 4, the insurer notified the insured that the policy was cancelled.  *Id.*  The insured was in an accident on June 4.  *Id.*  The insured claimed that the insurer failed to provide sufficient statutory notice of the cancellation under Arkansas' 10-day notice requirement.  *Id.* The court, however, found that the April 12 notice complied with the ten-day notice requirement and the cancellation notice became effective when the insured's check failed to clear.  *Id.*

The *USAA* case, however, is factually distinguishable because the insured had notice of the requirement that the payment had to be honored to rescind the cancellation notice.  And, unlike this case, the accident in *USAA* occurred after the payment was dishonored.  Because of these differences, the *USAA* court did not discuss policy issues regarding notice and the court did not specifically state when the cancellation notice went into effect.

The *USAA* court merely stated that the notice of cancellation was sufficient to meet the statutory ten-day notice requirement and that "when [the insured]'s check failed to clear, the

10

cancellation notice became effective." *Id.* If the Notice of Cancellation in this case was not considered effective until the date the payment was dishonored, the Policy would have been in place on the date of the fire. Moreover, the *ASUU* court did not consider whether the terms of the policy in question or the cancellation notice notified the insured that reinstatement was only conditional. The court is, therefore, not persuaded that the holding in *ASUU* is instructive in this case.

At the time of the fire in this case, the Club had made its premium payment five days earlier, the payment had not been presented to the bank or dishonored, and the Club had not received the Reinstatement Notice notifying the Club of Travelers' conditions for reinstatement. The Policy and Cancellation Notice did not permit retroactive cancellation of the Policy and did not contain conditions related to reinstatement. There was no reason for the Club to consider alternative insurance coverage, much less an opportunity for it to obtain replacement coverage. As stated above, the court finds that the Club was significantly prejudiced by Travelers delay in presenting the payment authorization to the bank. By waiting until two days after the cancellation date, there was no opportunity for the Club to obtain replacement coverage. Moreover, Travelers presented the payment authorization two days after the fire when the Club had not had receipts to deposit for two days. Based on Utah insurance law and the policies underlying it, the court concludes that the Policy was in effect on the date of the fire. Accordingly, the court grants Plaintiff's motion for summary judgment and denies Defendant's cross motion for summary judgment.

**Motion to Strike**

The Club seeks to strike five paragraph in Wanda Braddy's Affidavit, ¶¶ 5, 8, 9, 10, and

11

11, on the grounds that the contents of those paragraphs are erroneous, speculative, lack foundation, and are misleading by omission of important information.  The Affidavit was submitted prior to Braddy's deposition in the case, and the Club argues that some of her deposition testimony contradicts her Affidavit.  Given the court's determination of the motions for summary judgment, the court finds the challenges to these paragraphs of the Wanda Braddy Affidavit to be moot.  While the court did not rely on the testimony, it finds no basis for striking it.  The Club's challenges go more to the appropriate weight to give the testimony than the admissibility of the testimony.  Accordingly, the court denies the motion to strike.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Cross Motion for Summary Judgment is DENIED, and Plaintiff's Motion to Strike is DENIED.  Therefore, the Clerk of Court is directed to enter judgment in favor of Plaintiff.

DATED this 17th day of August, 2009.

DALE A. KIMBALL
United States District Judge